UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| WILLIAM MCCALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:08-CR-57 |
| ) | (2:13-CV-22) |
| UNITED STATES OF AMERCIA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Following a jury trial, Petitioner was found guilty of conspiring to distribute, and to possess with the intent to distribute, 50 or more grams of methamphetamine. He was sentenced on August 20, 2009, to 210 months' imprisonment.[1] Petitioner appealed to the Sixth Circuit Court of Appeals, arguing that the search of the vehicle he was driving, resulting in the discovery of a quantity of methamphetamine, was unconstitutional. He also argued that a two-level sentencing enhancement for possession of two guns was unjustified. The Sixth Circuit accepted neither argument and affirmed the judgment.[2] On January 17, 2012, the Supreme Court declined to issue a writ of certiorari.[3]

Petitioner timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 93], which he has amended three times [Docs. 101, 103, and 107]. For the reasons discussed in the following paragraphs, the Court FINDS the Petitioner's motion, as amended, should be DENIED.

---

[1] Judgment , Doc. 85
[2] Doc. 89
[3] Doc. 92

On May 15, 2008, Petitioner was driving a Pontiac TransAm on Interstate 26 in Johnson City, Tennessee. Because he was driving at a high rate of speed and tailgating the car in front of him, an officer of the Johnson City Police Department pulled him over for the traffic offense of Following Too Closely.[4] The officer saw two rifles on the backseat of the car.[5] After some discussion about those guns, Petitioner consented to a search of the car.[6] The officer found two bags containing an off-white substance which field-tested positive for methamphetamine.[7] Plaintiff was arrested, and an additional bag of methamphetamine was found in his pants pocket.[8]

The bags of methamphetamine were sent to the Drug Enforcement Agency's laboratory in Miami, Florida which ultimately reported that the total contents weighed 206.6 grams with a purity rate of 36.6%, equaling 81.8 grams of actual methamphetamine.

Petitioner's theory at trial was that the bag of methamphetamine found in his pants pocket indeed belonged to him, but he had no knowledge or ownership of the two bags of methamphetamine found in the car. He testified that the car was owned by Susan Teaster, from whom he borrowed it; that he had been driving it for three or four days before the traffic stop; and that he believed the methamphetamine found in the car had been left there more than fourteen months earlier by the previous owner of the car, Raul Perez.[9]

I. **Petitioner's Original Motion [Doc. 93]**

Petitioner presents five grounds in his original motion, all based upon what he asserts was deficient representation by his retained attorney. An attorney is presumed to have provided

---

[4] Doc. 70 p. 34
[5] Doc. 70 p. 35
[6] Doc. 70 p. 45
[7] Doc. 70 p. 51
[8] Doc. 70 p. 55
[9] Doc. 71 p. 281-82

2

effective assistance, and a § 2255 petitioner bears the burden of showing that the attorney did not. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). A petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If a Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*GROUND ONE:* Petitioner first argues that his attorney was constitutionally ineffective regarding plea negotiations. He claims that his attorney told him that he could get him a ten-year plea bargain, but he advised Petitioner to decline such an offer and proceed to trial because: (1) he would win at trial; (2) in the unlikely event he lost at trial, he would win on appeal; and (3) if Petitioner was convicted, the maximum imprisonment he could receive would be thirteen years (156 months). Petitioner asserts in his first ground that but for his attorney's wrongful advice, he would have accepted a plea offer.

"A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).

Even if it be assumed that his attorney advised him to eschew a proffered plea agreement or plea negotiations, Petitioner's argument collapses because he has failed to satisfy the second

3

prong of the foregoing test, *viz.*, that he would have pled guilty but for his attorney's deficient advice.

Although a plea agreement was in fact submitted to Petitioner and his previous attorney,[10] Petitioner fails to show that the plea agreement contained any guarantee of a particular sentence; moreover, the response of the government flatly states that it did not.[11] The government's response goes on to state that under no circumstance would the prosecuting Assistant United States Attorney have submitted a plea agreement which limited Petitioner's sentencing exposure to the statutory minimum of 10 years' imprisonment.[12]

Petitioner seems to argue that he had a "right" of some sort to a plea agreement the terms of which he could dictate. That, of course, is not the law. *See Weatherford v. Bursey,* 429 U.S. 545, 561 (1977). Additionally, it is noted that after the plea agreement was submitted to him, Petitioner discharged his court-appointed attorney and then retained Attorney Dan Smith, whom he now accuses of deficient performance. At his sentencing hearing, Petitioner referred to the plea agreement submitted to him, stating that his then-lawyer never went over it with him. He went on to complain several times to this court that he was being punished for "stressing," *i.e.*, exercising, his constitutional right to a jury trial. When the court said that he *chose* to exercise his constitutional right to a jury trial, Petitioner agreed, saying only that he was being punished for doing so.[13]

Regardless that neither lawyer "went over" the plea agreement with him, Petitioner opted to go to trial. The discussion between Petitioner and the court at the sentencing hearing cannot be interpreted otherwise. He now has Buyer's Remorse.

---

[10] Transcript of Sentencing Hearing, doc. 88, p. 43
[11] Doc. 97, p. 9
[12] Doc. 97 p. 9
[13] Doc. 88, p. 42-44.

4

Second, Ronnie Frost, Petitioner's cellmate at the Greene County Jail, testified at trial that Petitioner told Frost that he expected to "beat this case" by claiming that the drugs were left over from the previous owner of the car.[14] In other words, albeit perversely, Petitioner was insisting that he was actually innocent of the conspiracy charge, and that he intended to go to trial. Indeed, Petitioner to this day insists that he is actually innocent: "I am not guilty of the crime I was found guilty of."[15] In *Humphress*, the Court of Appeals held that Humphress' motion "must fail because he has not established a reasonable probability that he would have pled guilty if properly advised by counsel."[16] The Court of Appeals' holding was partly based on the petitioner's assertion of innocence at his trial and during the course of the subsequent §2255 proceeding,[17] precisely what Petitioner is now doing in this case. Petitioner has failed to show a reasonable probability that he would have accepted the plea offer of the government. *Humphress, supra*.

*GROUND TWO:* Petitioner's second ground is that his attorney refused to hire an expert after Petitioner demanded that he do so.

Both Sollie Rabun, an agent with the First Judicial District Drug Task Force, and Brian Vicchio, a DEA Drug Task Force agent, testified that they observed the methamphetamine on May 15, 2008, and it appeared to be very moist. The obvious inference to draw from this testimony is that the methamphetamine had just recently been manufactured.

According to Petitioner's motion, this expert was to have been a "professional drug analyzer" (a chemist, it is assumed) who would have ascertained the moisture content of the methamphetamine seized from the vehicle on May 15, 2008, and, based on that moisture content,

---

[14] Doc. 70, p. 131
[15] Petitioner's Affidavit, Doc. 93-1
[16] 398 F.3d at 859.
[17] *Id.*

5

opined that the methamphetamine was more than two days' old when seized. Petitioner of course is arguing that an expert's opinion that the methamphetamine was more than two days old at the time it was seized would have corroborated his trial testimony that the methamphetamine found in the car was placed there by Raul Perez, the car's previous owner.[18] The latest Perez would have been in possession of the car was February 2007, over fourteen months before Petitioner was arrested.[19]

The methamphetamine was seized on May 15, 2008. Petitioner was arrested and appeared before the Magistrate Judge on May 16, 2008. The Magistrate Judge appointed Federal Defender Services to represent Petitioner. When Federal Defender Services withdrew, Jefferson Fairchild, a CJA panel attorney was appointed to represent Petitioner on May 20, 2008. Petitioner retained attorney Smith on September 25, 2008, four and a half months after the methamphetamine was seized. Petitioner fails to explain how an expert retained by Mr. Smith could examine a quantity of methamphetamine sometime after September 25, 2008, and determine its moisture content as of May 2008.

To rebut Defendant's trial testimony that the methamphetamine had been in the car at least fourteen months before May 15, 2008, the government called another DEA Drug Task Force Agent, Mike Commons. Contrary to Petitioner's assertion that Agent Commons is a "layman," Agent Commons has had extensive training regarding the production of methamphetamine, and has testified many times before this Court as an expert. Although Agent Commons disclaimed any expertise on "how things pick up moisture," he has years of practical experience and training. After Agent Commons described for the jury the various methods of manufacturing methamphetamine, he unequivocally stated that a quantity of methamphetamine

---

[18] Doc. 71, p. 138
[19] Susan Teaster bought the car from Honeycutt Towing in December 2007, Doc. 71, p. 93. Honeycutt Towing obtained possession of the car in February 2007, Doc. 71, p. 82.

would not be moist after fourteen months even if it was in a plastic bag.[20] Even if Agent Commons was not competent to offer an opinion that the moist meth in the two bags could not possibly be fourteen months' old, no objection was made to his testimony. And though Petitioner has alleged that attorney Smith was ineffective in a myriad of ways, his failure to object to Commons' testimony is not one of them.

In *Tinsley v. Million*, 399 F.3d 796 (6th Cir. 2005), one issue before the Court of Appeals in a § 2254 habeas case was "whether [the petitioner's lawyer] was required to obtain an expert of his own or whether it sufficed to subject the prosecution's expert to cross-examination."[21] The court held that the petitioner "failed to establish prejudice arising from the modest difference between the jury hearing this theory of defense through cross-examination and hearing it through the mouth of another expert. Nor has the [the petitioner] identified an expert who would have testified [to the opinions he said he required]."[22]

Additionally, the case cited by the government from the Eighth Circuit makes the same point: an attorney's failure to retain an expert does not constitute ineffective assistance if the attorney's cross-examination of the government's witness, i.e., Agent Commons, "effectively raised non-incriminating inferences which a jury could draw … [and] a more technical analysis would [not] have altered the verdict." *Knott v. Mabry*, 671 F.2d 1208, 1213-14 (8th Cir. 1982). Attorney Smith's cross-examination of Agent Commons regarding the moisture content of the methamphetamine quite likely was superior to the testimony of any expert, again recalling that the expert would have been called upon to express an opinion regarding the moisture content of the methamphetamine on May 15, 2008, based upon an examination that occurred sometime

---

[20] Doc. 72, p. 16-17
[21] 399 F.3d at 806.
[22] *Id.*

7

after September 25, 2008.[23] And, lest the fact be overlooked, the plastic bags necessarily were opened at least once, and probably several times, after May 15 by forensic chemists at the DEA laboratory to determine the nature of the contents.

Petitioner argues that the arresting officers (or perhaps the two federal agents) "deliberately mixed the evidence to cripple [his] defense." In other words, he says that the agents mixed the contents of the three bags in order to make it impossible for an expert to determine the age of the methamphetamine seized from the car. This is an utterly unsupported statement. It is Petitioner's *ipse dixit*, nothing more.

Petitioner has failed to demonstrate the retention of an expert would have served any purpose at the trial.

Petitioner also raises two other and quite distinct claims in Ground Two. First, he argues that his attorney and the prosecuting attorney had a "seeming conflict of interest." His only basis for this theory is that Mr. Smith was an assistant United States Attorney before he retired and went into private practice and, while an AUSA, he "hired" the prosecuting AUSA, Ms. Hebets.

Mr. Smith, of course, hired neither Ms. Hebets nor any other assistant U.S. Attorney. That was and remains the prerogative of the United States Attorney. Petitioner's claim that the previous professional relationship of these two lawyers somehow created a conflict of interest is baseless.

Second, he suggests that the prior relationship between Mr. Smith and Ms. Hebets explains why Mr. Smith "coerced [him] to waive the right to the government's professional analyzer testifying, and why he denied me access to testing results…." All attorney Smith did was to stipulate to the results of the chemical analysis of the three baggies – that they contained

---

[23] The examination likely would have been much later than September 25; it would have taken some time to locate an expert, coordinate schedules, and then perform the tests.

206.6 grams of a substance that contained 81.8 grams of actual methamphetamine. Petitioner's defense was and still is that the methamphetamine in his pants' pocket was methamphetamine which he admitted belonged to him, but he had no knowledge of the methamphetamine in the two bags found in the car which probably was placed there by Raul Perez. Attorney Smith cannot be faulted for stipulating to a rather perfunctory fact which inexorably would have been proven, when Petitioner was disclaiming any interest in or knowledge of the subject of that stipulation.

None of the claims raised in Ground Two have any merit.

*GROUND THREE:* In Ground Three, Petitioner accuses this court of gender bias when it excused a female juror. He claims that attorney Smith disregarded his demands to object to the juror's discharge and therefore rendered ineffective assistance.

This claim is palpably frivolous. The juror in question was late for court. After waiting approximately 20 minutes for her to arrive, the court asked the attorneys if they wished to wait longer or to proceed without her.[24] Since there were thirteen jurors in the box, excusing this particular juror still left twelve to decide Petitioner's guilt or innocence.[25] Both attorneys agreed to proceed.[26] After the witness, Agent Commons, had testified, the tardy juror arrived. The court offered the parties the option of leaving things as they were, or placing the juror in the box and starting over with Agent Commons. Attorney Smith and AUSA Hebets opted to leave things as they were, and the juror was allowed to leave.[27]

The record is clear why this juror was discharged. There was no "gender bias" as Petitioner baselessly claims. The discharge of this juror notwithstanding, Petitioner was tried by

---

[24] Doc. 72, p. 7.
[25] Doc. 72, p. 6.
[26] Doc. 72, p. 7.
[27] Doc. 72, p. 17.

9

twelve of his fellow citizens. Mr. Smith cannot be faulted for agreeing to the discharge of a redundant juror.

*GROUND FOUR:* In his fourth ground, Petitioner makes two similar claims. He first argues that attorney Smith should have moved for a mistrial when a witness testified that the baggies of meth were left unattended in the roll call room at police headquarters and therefore "contaminated." This is a misstatement of the testimony at the trial. The baggies of meth in fact were placed on a table at the police station where they were viewed by the drug agents, and perhaps even picked up by other officers, but there was no testimony that they were unattended at any time. Again, Petitioner makes an assertion that has no support in the record. Attorney Smith was not ineffective for failing to move for a mistrial based on non-existent facts.

His second argument in Ground Four is that Mr. Smith should have moved for a mistrial because the baggies could not be tested for the absence of Petitioner's fingerprints because they had been inappropriately handled by so many other people, all of them law enforcement officers.

Putting aside the unlikelihood of finding usable fingerprint residue on plastic baggies,[28] the absence of Petitioner's fingerprints on the bag would have had little probative value when weighed in the balance with the following: (1) the drugs were found in the car he was driving; (2) according to Petitioner's testimony, the drugs must have been placed in the car fourteen months earlier; (3) that meth was moist; (4) the meth found in Petitioner's pocket looked similar to the meth found in the car, and the three bags were tied in a similar manner; (5) the agent's testimony that Petitioner offered to obtain a huge quantity of meth from a North Carolina dealer, *which he had done before*, if the charges against him were dismissed[29]; and (6) Frost's testimony that Petitioner told him that when he was stopped, he was on his way to Wytheville, Virginia to

---

[28] Doc. 71, p.45.
[29] Doc. 71, p.13

trade the meth for other drugs. In short, the jury could easily have found, and likely would have found, that Petitioner was aware of the meth in the car, notwithstanding the lack of his fingerprints on the baggies.

Petitioner must show that "there [was] a reasonable probability that counsel would have found fingerprint evidence favorable to his claim of innocence, thus undermining confidence in his conviction." *United States v. Garvin*, 270 F. App'x 141, 144 (3rd Cir. 2008). In *Berry v. Palmer*, 518 F. App'x 336 (6th Cir. 2013), a similar situation, albeit involving a different forensic test, was before the Sixth Circuit Court of Appeals. Berry was convicted in state court for sexual assault. He appealed the district court's denial of his §2254 petition. One of his claims was that DNA analysis of a hair found on the victim's bed would have shown that the hair matched a third party, and therefore his trial attorney was ineffective for failing to obtain DNA analysis of that hair. The Sixth Circuit first pointed out that the petitioner bears the burden of rebutting the presumption that trial counsel had "tactical reasons" for the action he did, or did not, take.[30] The court then noted that the petitioner must demonstrate that he was prejudiced by counsel's deficient performance by showing "that counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal."[31] The court held that Berry did not carry this burden.

Neither has Petitioner in this case carried his burden. As previously stated, the absence of Petitioner's fingerprints on the bag would not have generated a different result in the outcome of this trial.

*GROUND FIVE:* Petitioner says that attorney Smith rendered ineffective assistance because he failed to move for a judgment of acquittal, and failed to file pretrial motions for acquittal.

---

[30] 518 F. App'x at 339-40, (citing *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)).
[31] *Id.*, at 340.

As for the allegation that attorney Smith failed to move for a judgment of acquittal, this is another example of an assertion that is wholly fabricated. Mr. Smith moved not once, but twice, for a judgment of acquittal; *see*, doc, 71, p. 65, and doc.72, p. 5-6. And regarding the claim that Mr. Smith did not file a pretrial motion for acquittal, his failure to do so is easily explained; there is no such thing.

## II. The First and Third Amendments [Doc. 101, 107]

Petitioner argues that the two-level increase within the sentencing guidelines was improper and violated the rule of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because the judge, not the jury, found that Petitioner possessed firearms in the course of the underlying drug trafficking offenses with which he was charged.

*Alleyne* only prohibits findings of fact by the judge which increase the statutory penalty for a crime; it does not prohibit judicial fact-finding that affects only the *range* of penalty within the statutory limits. *United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013). The court's finding that Petitioner possessed the firearms as part of his drug trafficking scheme did not alter the statutory minimum and maximum sentence upon conviction for the offense with which Petitioner was indicted—ten years to life. His sentence of 210 months falls within that minimum and maximum.[32]

### III. The Second Amendment [Doc. 103]

Petitioner claims that his counsel rendered ineffective assistance because he did not familiarize himself with the sentencing guidelines and object to the two-level increase in his guideline range attributable to the guns found in his car. In reality, although Petitioner puts it in terms of ineffective assistance of counsel, he is really arguing that there was no evidence to

---

[32] The fact that Petitioner was not charged with a separate firearms offense is irrelevant. *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010).

12

support the finding by this court that the guns found in the backseat of his car were related to his drug trafficking. He disputes the testimony of the witness Ronnie Frost, who testified that Petitioner said he was taking the meth and guns to Wytheville, Virginia to trade for other drugs, and says Frost's testimony was refuted by one of Petitioner's witnesses.

Contrary to Petitioner's claim, attorney Smith did object to the two-level firearm enhancement.[33] This court overruled the objection and concluded that the guns were related to Petitioner's drug dealing. The fact that this court did not agree with Mr. Smith does not mean that Mr. Smith provided deficient representation.

**CONCLUSION**

None of Petitioner's claims have merit. His motion, as amended, is DENIED.

Having considered Petitioner's motion under the standard of *Slack v. McDaniel*, 529 U.S. 473 (2000), the court concludes that reasonable jurists could not conclude that the denial of Petitioner's motion is wrong or debatable. Petitioner has not demonstrated a "substantial showing of a denial of a constitutional right" as 28 U.S.C. §2253(c)(2) requires before a certificate of appealability may issue. Therefore, this court declines to issue a certificate of appealablity.

A judgment in accordance with this memorandum and order will be filed.


SO ORDERED:

s/ R. Leon Jordan<br>
United States District Judge

---

[33] Doc. 83, ¶ 4; Doc 88, p. 7 et seq.